UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAMARR T. CRITTENDEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) No. 1:17-cv-02279-JMS-DLP |
| | ) |
| KEITH BUTTS Warden, | ) |
| | ) |
| Respondent. | ) |

**Entry Discussing Petition for a Writ of Habeas Corpus**

Petitioner Lamarr Crittenden was found guilty of child molesting following a bench trial in an Indiana state court. He is currently serving a 35-year sentence for this conviction. Crittenden now seeks a writ of habeas corpus. For the reasons explained in this Entry, Crittenden's petition for a writ of habeas corpus is **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

## I. Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On direct appeal, the Indiana Court of Appeals summarized the relevant facts as follows:

> In 2006, Crittenden began cohabiting with Shontae Matlock and her daughter D.M., born February 8, 1999, on Denny Street in Indianapolis. On one occasion during 2007 or 2008, Crittenden entered D.M.'s bedroom while she was sleeping and ordered her to perform fellatio on him.

> When she refused, Crittenden placed his hand inside her vagina and moved it around. He then performed anal intercourse on her. Crittenden admonished D.M. not to tell anyone about the incident. Nevertheless, D.M. told her mother, who refused to believe her allegations. On May 11, 2008, D.M. reported the incident to her aunt, Lawanna Smith, who took her to the hospital for a medical examination.

> On October 7, 2008, the State charged Crittenden with two counts of class A felony child molesting and two counts of class C felony child molesting. On April 7, 2009, the State filed a notice of intent to introduce child hearsay statements at trial. On April 27, 2009, the trial court held a hearing on the matter and determined that such statements were admissible, subject to limitations set forth in *Tyler v. State,* 903 N.E.2d 463 (Ind. 2009). That same day, Crittenden waived his right to jury trial, and a bench trial ensued. The trial court found Crittenden guilty of one count of class A felony child molesting and one count of class C child molesting.

*Crittenden v. State*, 920 N.E.2d 277 (Ind. Ct. App. 2010) (*Crittenden I*).

In his direct appeal, Crittenden argued that the State presented insufficient evidence to prove that he molested D.M. in Indiana's territorial jurisdiction. The Indiana Court of Appeals found sufficient evidence and affirmed Crittenden's convictions. *Id.* Crittenden raised the same issue in a petition to transfer to the Indiana Supreme Court, which denied his petition on March 11, 2010.

On August 10, 2010, Crittenden filed a petition for post-conviction relief, which the trial court granted in part and denied in part, ordering a new sentencing hearing. Crittenden appealed to the Indiana Court of Appeals, raising procedural issues in the post-conviction court, challenging the admission of evidence at the post-conviction evidentiary hearing, and arguing that he received ineffective assistance of trial and appellate counsel. The Indiana Court of Appeals affirmed the trial court. *Crittenden v. State*, 2015 WL 3965812 (Ind. Ct. App. 2015) (*Crittenden II*). Crittenden then filed the instant petition for a writ of habeas corpus.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). "Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him

unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Guys v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### III. Discussion

In support of his petition for habeas relief, Crittenden argues that: (1) his counsel was ineffective for failing to investigate, failing to call witnesses, and failing to present any evidence on his behalf; (2) his counsel was ineffective for failing to correctly advise him about a plea offer; (3) his counsel was ineffective for failing to cross-examine D.M. during the pre-trial child hearsay hearing; (4) his counsel had a conflict of interest; (5) his classification as a sexually violent predator violated the *ex post facto* clause of the United States Constitution; (6) it was an *ex post facto* violation for the Indiana Court of Appeals to cite a case in its second direct-appeal opinion that was not available when Crittenden committed his crimes; (7) his counsel was ineffective for failing to request sentencing transcripts; and (8) the evidence against him is insufficient to sustain the conviction. The respondent argues that grounds Four and Seven are procedurally defaulted and that Crittenden is not entitled to relief on the merits of the remaining grounds.

A. *Grounds Four, Six, and Seven*

In grounds Four and Seven of his habeas petition, Crittenden argues that his counsel had a conflict of interest and that his counsel was ineffective for not requesting the sentencing transcripts because the sentencing transcripts would have shown the conflict of interest. The respondent argues that these claims are procedurally defaulted. In Ground Six, Crittenden argues that in reviewing his sentence, the Indiana Court of Appeals violated the *ex post facto* clause because it, when it reviewed his sentence as part of his second direct appeal, relied on caselaw that did not exist at the time the acts at issue took place. This claim, too, is procedurally defaulted.

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis*, 390 F.3d at 1026. "A prisoner can overcome procedural default by showing cause for the default and resulting prejudice, or by showing he is actually innocent of the offense." *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017). This is at least in part because "[c]ause is defined as an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015).

Crittenden does not dispute that he has failed to present Grounds Four and Seven to the Indiana state courts, but he argues that the sentencing transcripts were not available at the time he sought relief in the state court. Crittenden bases his claims in Grounds Four and Seven on an alleged conflict of interest on the part of trial counsel. He states that his counsel requested that a "conflict attorney" be appointed at his sentencing hearing, but none was appointed and that the court did not make an inquiry into the conflict. He concludes that because the transcripts were unavailable, the facts supporting this claim were not reasonably available to him at the time of his post-conviction proceedings. The respondent contends that the transcripts have been available since Crittenden's direct appeal, and the record seems to support this assertion. Even if the transcripts were not available to Crittenden, he does not argue that he was somehow unaware of, or could not have discovered, the facts upon which his conflict of interest claim are based at the time of his post-conviction proceedings. As long as he was aware of those facts he could have presented them whether he had the transcript or not. He therefore has not shown good cause for his procedural default and he is not entitled to relief on grounds Four and Seven. Crittenden also did not present Ground Six to the state courts and he provides no reason for failing to do so. He is thus not entitled to relief on this ground either.

B. *Grounds One, Two, and Three*

In Grounds One, Two, and Three, Crittenden argues that his counsel was ineffective. A defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under

prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694).

When the deferential AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Crittenden raises several ineffective assistance of trial counsel claims. The Indiana Court of Appeals addressed each of these claims after setting forth the *Strickland* standard governing ineffective assistance of counsel claims. The Court will address each in turn.

### 1. Failure to Call Witnesses and Present DCS Reports

Crittenden first argues that his counsel was ineffective for failing to present witnesses in support of his defense, including the victim's mother. He also argues that his counsel failed to investigate the DCS reports and present them at trial, which contained exculpatory evidence.

Addressing Crittenden's claim that his counsel should have called the victim's mother as a character witness, the Indiana Court of Appeals stated:

> In regard to witnesses, Crittenden argues that his counsel should have called the following as witnesses: (1) D.M.'s mother to testify that she did not believe that Crittenden had inappropriately touched D.M.; (2) D.M.'s teachers to see if D.M.

had ever reported abuse to them; and (3) character witnesses to testify that Crittenden had never molested any other children.

"A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess[.]" *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998). "When ineffective assistance of counsel is alleged and premised on the attorney's failure to present witnesses, it is incumbent upon the petitioner to offer evidence as to who the witnesses were and what their testimony would have been." *Lowery v. State*, 640 N.E.2d 1031, 1047 (Ind. 1994), reh'g denied, cert. denied.

We need not determine whether trial counsel's decision not to call witnesses was a reasonable trial strategy because Crittenden has failed to meet his post-conviction relief burden on this ineffective assistance claim. Crittenden did not offer any affidavits from these proposed witnesses or any other evidence to show what these witnesses' testimony would have been; thus, he has failed to meet his burden on this claim. *See Lowery*, 640 N.E.2d at 1047.

*Crittenden II*, 2015 WL at 3965812 *12.

Crittenden challenges this ruling arguing that he was unable to offer testimony from this proposed witness because the PCR court denied his request for a subpoena to this witness. But even if Crittenden had been able to present evidence regarding what D.M.'s mother's testimony would have been, he still has failed to show that his counsel's performance was deficient. Counsel testified at the post-conviction hearing that it was not a good strategy to try to present a character witness during the guilt phase of trial: "It's not an appropriate witness to call [at] trial and I know how the Court would react if I attempted to do it" (PCR Tr. 111).[1] "The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016), quoting *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). Strategic decisions like these, so long as they are made after a thorough investigation of law and facts, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. The Supreme Court

---

[1] The Court uses the following citation format when citing to the state court records: "Trial Tr." for the trial record and "PCR Tr.," for the post-conviction hearing transcripts.

has made clear that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' and that the burden to 'show that counsel's performance was deficient' rests squarely on the defendant." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 687, 690)). Here, the Indiana Court of Appeals' rejection of this ineffective assistance of counsel claim on the basis that counsel explained it was not a good trial strategy to present character witnesses represents a reasonable application of *Strickland*.

Crittenden also argues that his counsel should have investigated DCS reports regarding the care of D.M. and introduced them at trial. One of these reports followed "a complaint filed on April 1, 2008, regarding a lack of food, shelter, and clothing in D.M.'s home" and "contained a statement that D.M. denied any abuse in the home at that time" *Crittenden II*, 3965812 *11. The other report follows "a complaint filed on May 11, 2008, regarding allegations of sexual abuse against Crittenden that then led to the current charges being filed against him" *Crittenden II*, 3965812 *3, n.2.

The Indiana Court of Appeals addressed Crittenden's claim that his counsel was ineffective for failing to investigate the DCS reports explaining:

> Crittenden asserts that his trial counsel should have investigated the DCS reports by deposing the family case managers who wrote the reports. Crittenden contends that if his trial counsel would have fully investigated the DCS report from April 2008 then he would have seen that the report – which was based on an investigation of the lack of food, shelter, and clothing in the home – contained a statement that D.M. denied any abuse in the home at that time. Critten also argues that his trial counsel was ineffective for failing to introduce the April 2008 and May 2008 DCS reports into evidence during the bench trial.
>
> During the post-conviction hearing, Crittenden's trial counsel testified that he had reviewed the DCS report before trial. He further testified that he did not specifically recall what his thinking or strategy was at the time of trial regarding the reports but that, when looking at them at the post-conviction hearing, he was able to speculate as to strategy regarding the reports. Trial counsel testified that he

would not have offered evidence of the May 2008 report because it "would have likely convinced the Judge [during the bench trial that Crittenden was] guilty as opposed to anything that was exculpatory" and because it was a repetition of what the victim had told the detective and the forensic child interviewer. Crittenden's trial counsel testified that he would not have admitted the April 2008 report because it related to conduct not charged in Crittenden's case and that it would not have been relevant. Additionally, counsel testified that he would not have deposed [the] DCS case managers because "their testimony would have tended towards proving the State's case as opposed to anything exculpatory."

Because trial counsel's decision to not further investigate the DCS reports by deposing the case manager and his decision to not introduce them into evidence was a reasonable strategic decision, Crittenden has failed to show that his trial counsel's performance was deficient. Moreover, Crittenden has failed to demonstrate that there is a reasonable probability that, but for his trial counsel's alleged errors, the result of the proceeding would have been different.

*Id.* at *12.

Crittenden argues that the Indiana Court of Appeals misapplied *Strickland* to this claim and that his counsel was ineffective for failing to use the April 2008 report as impeachment evidence because that report contained a statement that D.M. denied any abuse in the home. He also speculates that the complainant who initiated the April 2008 report is the victim's aunt who was biased against him. He infers from this that if his attorney had been able to show that the aunt was the complainant, he could have shown that she was biased and used this bias to impeach her testimony regarding the alleged abuse.

Here, the Court of Appeals concluded that counsel's decision not to further investigate the DCS reports or introduce them into evidence was based on his review of the reports and was a reasonable strategic decision. With regard to the April 2008 report, Crittenden's assumption that the complainant was the victim's aunt and that she was biased against him is insufficient to show that counsel failed to act reasonably in deciding not to pursue that line of inquiry. Crittenden has failed to show that this was an unreasonable application of *Strickland*.

Crittenden also argues in reply in support of his habeas petition that his counsel never

filed a motion for discovery of D.M.'s medical records. He contends that counsel's failure to investigate these records prejudiced his defense and that counsel could have uncovered facts that could have been used to help his defense. But Crittenden did not raise this argument at every stage of his state court proceedings and did not raise this argument before filing his reply in support of his habeas petition, so the Court deems it waived, and need not address it.

2. Plea Negotiations

Crittenden next argues that his counsel was ineffective for failing to correctly advise him about a plea offer, causing him to reject the offer. Crittenden states that, on the day before trial, he was offered a plea of eight years. At the same time, counsel advised him that he could waive his right to a jury trial and that he had five minutes to decide. He also states that his counsel failed to advise him of the consequences of being convicted of Class A felony child molesting, including lifetime parole, lifetime registration, and classification as a sexually violent predator. Further, Crittenden contends that his counsel failed to advise him that he could be convicted based solely on the testimony of the victim.

Addressing these arguments, the Indiana Court of Appeals stated:

The record before us does not support Crittenden's assertions. During Crittenden's sentencing hearing, his trial counsel informed the trial court that he had discussed these issues with Crittenden. Specifically, his trial counsel stated:

> And Judge, I feel compelled to make at least a very minimal record so that the Court's [sic] aware and Mr. Crittenden may not recall the entirety of our conversation but did have some other folks there with me as we were discussing it and I remember distinctly assuring him that the Court could convict just as easily acquit and we discussed in detail when plea negotiations were ongoing what he was facing if convicted and what was offered by the State and I know sitting here now [Crittenden] probably feels like more time could have been spent explaining it to him but I made sure before we signed that document that I was satisfied he was clear and I thought he was clear minded that day and I though he understood the nature of the circumstances, so, if that has changed I can only

> base my recollection on what I remember and what I told him and I remember distinctly warning him of all possible outcomes."
>
> \*\*\*\*\*
>
> Because a plea was offered that morning that I advised him to consider with a high level of consideration.
>
> Furthermore, during the post-conviction hearing, Crittenden's trial counsel testified that, prior to trial, he had consulted with Crittenden regarding the possibility of a plea agreement and testified that he would have conveyed any plea offer to him. Additionally, his trial counsel testified that he consulted with Crittenden and informed him of what kind of evidence could be used against him.
>
> Other than Crittenden's self-serving testimony during the post-conviction hearing, he did not present any evidence that his trial counsel engaged in the behavior that he alleged. Accordingly, he has failed to show that the post-conviction court erred by denying his ineffective assistance claim.

*Crittenden II*, 3965812 at \*13. Counsel also testified at the post-conviction hearing that he consulted Crittenden about the State's plea offer. (PCR Tr. 71). According to counsel, he discussed with Crittenden the evidence that the State was going to use at his trial and the "kind of evidence [that] could be used by the State to obtain a conviction." (PCR Tr. 72). Specifically, he advised Crittenden "that a conviction could be obtained with no physical evidence such as no proof of penetration, no internal or external damage to the vaginal or … anal cavities." (PCR Tr. 72). Moreover, counsel was sure that, "in a case like this," he would have told Crittenden that the victim's uncorroborated testimony was sufficient evidence. (PCR Tr. 72–73). And counsel would have told Crittenden his opinion about the plea offer and discussed Crittenden's potential penalties if he lost at trial. (PCR Tr. 113).

In short, the trial court considered the evidence presented regarding the plea offered to Crittenden and concluded that counsel had properly advised Crittenden regarding the plea and the possibility of being found guilty. This Court's review of the record does not reveal that the Court

of Appeals acted contrary to federal law or unreasonably applied the law to the facts before it. Crittenden is therefore not entitled to relief on this claim.

### 3. Child Hearsay Hearing

Crittenden also argues that his counsel was ineffective for not cross-examining D.M. during the child hearsay hearing.

To determine whether statements that D.M. made to her aunt and a nurse were admissible at trial, the court held a child hearsay hearing before trial. (Tr. 11–53). During the hearing, the Court heard testimony from D.M. and her aunt. The court also admitted as exhibits the taped interview of D.M. by a forensic child interviewer and a transcript of that interview. (Tr. 36). At the end of the hearing, the Court held that the hearsay statements were admissible but stated that if D.M. testified at trial, the interview with the forensic interviewer would not be admitted. Although counsel did not cross-examine D.M. at the child hearsay hearing, he cross-examined her at trial. (Tr. 77-84).

Crittenden argues that D.M. had provided inconsistent statements regarding where the molestation took place and that she told the forensic child interviewer that she had observed a friend's father tell her friend to "suck his stuff" and that other children had touched her private parts. Crittenden contends that his counsel was ineffective for failing to cross-examine her regarding these statements at the hearing. Reviewing this claim, the Indiana Court of Appeals stated:

> The post-conviction court noted that while Crittenden's trial counsel did not cross-examine D.M. during they child-hearsay hearing, he had cross-examined D.M. during the bench trial. The post-conviction court also noted that, at the end of Crittenden's bench trial, the trial court specifically clarified that its verdict was based solely on the victim's trial testimony and not on any other statement she had made to others. The post-conviction court determined that, as a result, Crittenden had failed to show any prejudice from his trial counsel's decision not to cross-examine D.M. during the child-hearsay hearing.

*Crittenden II*, 2015 Wl 3965812, at *13.

Here, the Indiana Court of Appeals found that Crittenden's counsel was not ineffective for failing to cross-examine D.M. at the child hearsay hearing because counsel did cross-examine her at trial. That court also pointed out that cross-examination is a matter of trial strategy. *Id.*; *see also United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008) ("[D]eciding what questions to ask a prosecution witness on cross-examination is a matter of strategy."); *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010) (Courts "do not second guess the reasonable tactical decisions of counsel."). Crittenden has failed to show that this ruling was an unreasonable application of the law. First, because the trial court based its ruling on the testimony on trial, Crittenden has failed to show he was prejudiced because he failed to show how testimony at the child hearsay hearing impacted the trial. Moreover, the statements to the child interviewer were made available to the trial court during the child hearsay hearing and the trial court reviewed them during that hearing. Thus, even though counsel did not cross-examine D.M. regarding those statements, the trial court was aware of them at the child hearsay hearing. Crittenden therefore is not entitled to relief on this claim.

### C. *Ground Five*

In Ground Five of his petition, Crittenden argues that the trial court failed to sentence him under the law that was in effect at the time he allegedly committed the offense and he was therefore deemed a sexually violent predator in violation of the Ex Post Facto Clause. Crittenden points out that the statue in place at the time the acts at issue in this case took place required that a determination that a person is a sexually violent predator be made by two board certified experts while the statute in effect at the time he was convicted and sentenced allows a person to be deemed a sexually violent predator by operation of law. He concludes that because there was no

determination by board certified experts regarding whether he is a sexually violent predator, he must have been found to be one by operation of law. Crittenden raised this argument in his second direct appeal the Indiana Court of Appeals and that court found that Crittenden is incorrect in his conclusion that he has been found to be a sexually violent predator. *Crittenden v. State*, 2017 WL 961891, *5 (Mar. 13, 2017) (*Crittenden III*). That court explained: "There has been no determination as to Crittenden's status upon his release from incarceration and Crittenden has not been notified that he is required to register as a sexually violent predator." *Id.* Thus, Crittenden's claim that the trial court improperly classified him as a sexually violent predator in violation of the *ex post facto* clause fails.

D. *Ground Eight*

In Ground Eight, Crittenden contends that the evidence was insufficient to convict him. Specifically, Crittenden argues that the state did not prove territorial jurisdiction over the crimes at issue.

The respondent argues that Crittenden's territorial jurisdiction claim is based on state law and not truly a challenge to the sufficiency of the evidence because territorial jurisdiction is not an element of the crime. But the Indiana Supreme Court has held:

> [t]he plain, ordinary, and usual meaning of [I.C. § 35–41–1–1] clearly establishes 'in Indiana' as a prerequisite for Indiana criminal prosecutions and thus restricts the power to exercise criminal jurisdiction to Indiana's actual territorial boundaries." *Benham v. State,* 637 N.E.2d 133, 137 (Ind.1994). Consequently, this Court treats territorial jurisdiction as though it were an element of an offense and has held that the State must prove this element "beyond a reasonable doubt."

*An-Hung Yao v. State*, 975 N.E.2d 1273, 1276–77 (Ind. 2012) (quoting *Ortiz v. State,* 766 N.E.2d 370, 375 (Ind. 2002)).

The Court will therefore treat Crittenden's challenge to the sufficiency of the evidence to support territorial jurisdiction as a challenge to the sufficiency of the evidence that is cognizable

in this 2254 petition. The Supreme Court provided the standard for sufficiency of the evidence claims in habeas petitions in *Jackson v. Virginia*, 443 U.S. 307 (1979). In that case, the Court explained that "evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the *essential elements of the crime* beyond a reasonable doubt." 443 U.S. at 319 (emphasis added). "[H]abeas reviews of *Jackson* claims are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon v. Lashbrook*, 873 F.3d 982, 987–88 (7th Cir. 2017). "Federal review of these claims . . . turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1999).

Crittenden bases his sufficiency of the evidence claim on his contention that the trial judge, in rendering a verdict, specifically explained that the verdict was based only on the testimony of the victim at trial and not on statements that she had made to others. Because the victim did not articulate at trial specifically that the events happened in Indiana, Crittenden concludes that there was insufficient evidence of territorial jurisdiction. In addressing this challenge to the sufficiency of the evidence, the Indiana Court of Appeals stated: "When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences supporting the judgment." *Crittenden I*, 2010 WL 199311 at *1. Applying this standard to Crittenden's claim, the court held:

> In advancing his sufficiency claim, Crittenden relies on the trial court's statement during sentencing that its verdict "was based on the child's testimony [and] that [it] gave no weight in [its] decision to the *statements that the victim made to* [Aunt] Lawanna." D.M. testified that Crittenden molested her in her bedroom at their old

house. Aunt Lawanna testified that Shontae, D.M., and Crittenden lived in various houses all within Indianapolis during 2006, 2007, and 2008. . . . Clearly, Aunt Lawanna's testimony regarding the location of D.M.'s home was based on personal knowledge and not on any hearsay statements D.M. made to her. Thus, the State presented sufficient evidence of territorial jurisdiction.

The foregoing analysis by the Indiana Court of Appeals comports with the *Jackson* standard. First, it set forth the state analog to the *Jackson* standard and what the State was required to show to prove territorial jurisdiction. It then set forth evidence from the record that in its view was sufficient to establish this—namely, that D.M. stated that the molestation occurred at her home and that Aunt Lawanna stated that she lived in various houses within Indianapolis during the time at issue. This analysis demonstrates that the Indiana Court of Appeals "engaged in reasoned, good-faith decisionmaking" when applying the *Jackson* standard. *Gomez*, 106 F.3d at 199. As the Indiana Court of Appeals explained, the trial court noted that statements D.M. made to others were not considered, but Aunt Lawanna's testimony regarding where D.M. lived was based on her personal knowledge. The trial court's statement that it considered only D.M.'s testimony was clearly directed only to the hearsay statements at issue and not other testimony. Regardless, there was evidence in the record to support the conclusion that the acts took place in Indiana. Accordingly, the Indiana Court of Appeals applied the *Jackson* standard in a reasoned, good-faith manner. Crittenden therefore cannot show that he is entitled to relief on this claim.

### IV. Conclusion

This Court has carefully reviewed the state record in light of Crittenden's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. Because Crittenden failed to carry his burden on his claims, he is not entitled to habeas relief, and his petition is therefore **denied**.

Judgment consistent with this Entry shall now issue.

## V. Certificate of Appealability

Rule 11(a) of the *Rules Governing § 2254 Cases* requires the district courts to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and "[i]f the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Pursuant to § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Such a showing includes demonstrating "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and quotation marks omitted). Crittenden has failed to make this showing, and therefore a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

Date: 11/16/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

LAMARR T. CRITTENDEN
148648
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov